KAPLAN YOUNG
KORY L. KAPLAN, ESQ.
Nevada Bar No. 13164
Email: kory@kaplanyoung.com
10091 Park Run Drive, Suite 190
Las Vegas, Nevada 89145
Telephone: (702) 381-8888
Facsimile: (702) 832-5559

BROWN CLARK LE AMES STEDMAN & CEVALLOS LLP
Edwin B. Brown (*Pro Hac Vice Forthcoming*)
22342 Avenida Empresa, Suite 125
Rancho Santa Margarita, CA 92688
Phone: (949) 459-5900 Fax: (949) 713-7722
Email: edbrownlaw@gmail.com

*Attorneys for Plaintiff Sequoah Turner*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SEQUOAH TURNER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>AREA 15 LAS VEGAS LLC, a Delaware Limited Liability Company, AREA 15 GLOBAL LLC, a Delaware Limited Liability Company, KENNETH FISHER, an Individual, STEVEN FISHER, an Individual, WINSTON FISHER, an Individual, FISHER BROTHERS MANAGEMENT CO. LLC, a New York Limited Liability Company, FISHER BROTHERS FINANCIAL AND DEVELOPMENT COMPANY LLC, a New York Limited Liability Company, and DOES 1-50 Inclusive,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT** |

**COMPLAINT**

1

Plaintiff SEQUOAH TURNER (hereafter "Ms. Turner") for her Complaint complains and alleges against Defendants AREA 15 LAS VEGAS LLC, AREA 15 GLOBAL LLC (collectively "AREA 15"), KENNETH FISHER, STEVEN FISHER, WINSTON FISHER (collectively "FB Individuals"), FISHER BROTHERS MANAGEMENT CO. LLC (hereafter "Fisher Brothers Management"), FISHER BROTHERS FINANCIAL AND DEVELOPMENT COMPANY LLC (hereafter "Fisher Brothers Financial") (the two Fisher Brothers entities are hereafter referred to as "Fisher Brothers"), and DOES 1-50, inclusive (collectively "Defendants"), as follows:

**JURISDICTION AND VENUE**

1. This is a civil complaint brought by Sequoah Turner in the United States District Court under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by 42 U.S.C. 2000e-2 *et. seq.* and the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, federal statutes prohibiting discrimination in order to secure protection and redress deprivation of Ms. Turner's rights under these laws. Jurisdiction of this Court is therefore invoked under 28 U.S.C. 1331.

2. This action also includes claims arising out of Nevada anti-discrimination statutes, Nevada Revised Statutes ("NRS") 613.310 *et. seq.* Jurisdiction is also proper pursuant to NRS 14.065. The state claims are joined pursuant to the doctrine of supplemental jurisdiction and 28 U.S.C. 1367(a).

3. Ms. Turner asserts that she was subjected to discrimination and was treated disparately and subjected to a hostile work environment and retaliation due to her race, which is strictly prohibited under Title VII, Section 1981 and NRS 613.310.

4. As Ms. Turner's employers during the relevant time-period, Defendants conducted business regularly and systematically in Clark County, Nevada. Defendants' improper conduct at issue occurred in whole or in part in Clark County, Nevada, and engaged in an industry affecting commerce. Thus, pursuant to 28 U.S.C. 1391(b)(1), 28 U.S.C. 1391(b)(2), 28 U.S.C. 1391(c)(1) and 28 U.S.C. 1391(c)(2), venue is proper in the United States District Court for the District of Nevada.

5. Ms. Turner received a copy of her "Notice of Suit Rights" from the EEOC on or about June 5, 2022. Ms. Turner is in fulfillment of all jurisdictional requirements, including filing of this lawsuit within ninety (90) days of her receipt of the Notice of Suit Rights.

**COMPLAINT**

# THE PARTIES

6. Ms. Turner is an African American woman. At all times herein mentioned, she was a resident of the County of Clark, State of Nevada.

7. Defendants own and/or operate "AREA 15," a retail and entertainment complex located at 3215 S. Rancho Drive, Las Vegas, Nevada 89102.

8. At all times herein mentioned, Defendant AREA 15 Las Vegas LLC and AREA 15 Global LLC (collectively "AREA 15") are limited liability companies formed in Delaware and licensed to do business in Clark County, Nevada.

9. At all times herein mentioned, Defendants Fisher Brothers Management and Fisher Brothers Financial were New York limited liability companies and were the owners and/or managing entities for Defendant AREA 15.

10. At all times herein mentioned, Defendants Kenneth Fisher, Steven Fisher, and Winston Fisher ("FB Individuals") were owners and managers of Fisher Brothers Management and Fisher Brothers Financial.

11. At all times herein mentioned, Defendants were the agents, servants, and employees of each other and, at all times pertinent hereto, were acting within the course and scope of their authority as agents, servants, and/or employees, and acting on implied and actual permission and consent.

## FISHER BROTHERS ACTIVELY PARTICIPATED IN THE MANAGEMENT AND CONTROL OF THE ACTIONS OF AREA 15

12. Defendants Fisher Brothers Management and Fisher Brothers Financial controlled AREA 15. Indeed, in an announcement, Fisher Brothers advised the public that, "AREA 15 represents a collaborative venture between real estate development firm Fisher Brothers and creative agency Beneville Studios, both of New York."

13. Fisher Brothers' executives held out **AREA 15 as part of the Fisher Brothers group**. Fisher Brothers' control of AREA 15 is confirmed by AREA 15's Organization Structure chart and other documents.

14. Fisher Brothers, through the Defendant FB Individuals, managed the critical business activities of AREA 15, including but not limited to as follows:

   A. **Fisher Brothers' IT team handled all of the IT needs for AREA 15**.
   B. **Fisher Brothers assumed the role of training AREA 15 employees**.

COMPLAINT

3

  C. **Fisher Brothers controlled the process of obtaining AREA 15's Nevada liquor license.**

  D. **Fisher Brothers controlled the human resources for AREA 15**.

  E. **Fisher Brothers controlled the Internet network infrastructure for AREA 15**.

  F. **AREA 15's lease agreements were signed by Winston Fisher and Kenneth Fisher**.

  G. **Defendant FB Individuals communicated and advised each other on AREA 15 operational matters**.

  H. **Defendant Steven Fisher was involved in AREA 15 budget meetings** and posed questions to AREA 15 employees regarding AREA 15's budget.

 15. **Thus, Defendants Kenneth Fisher, Steven Fisher, and Winston Fisher were actively involved in the management and control of AREA 15**.

 16. Ms. Turner was always told that the Fisher Entities were owners of AREA 15. The Fisher Entities' own website (https://www.fisherbrothers.com/properties/area15) (last visited September 10, 2021) identifies AREA 15 as one of its properties and defines AREA 15 as a "collaborative venture between real estate development firm Fisher Brothers and creative agency Beneville Studios, both of New York."

 17. When AREA 15 employees gave tours of the AREA 15 facility, they were instructed to tell everyone that the Fisher Family and Fisher Entities controlled the facility. The City of Las Vegas complained constantly that "this isn't New York," and that it was hard to work with AREA 15 because of the New York City team's interference. It was common knowledge that the New York City team impeded AREA 15's efforts in Las Vegas.

 18. In the performance of Ms. Turner's job duties, she was directed by the Fisher Entities, answered to the Fisher Entities, was governed by the Fisher Entities, and directly communicated with the Fisher Entities, including but not limited to the following individuals and their respective job titles:

  **Philip Brohn**: Senior Executive for the Fisher Entities and Design and Construction Manager for AREA 15.

  **Ari Moses**: Director of Investments for the Fisher Entities and a board member of AREA 15.

//

**COMPLAINT**

4

**Clara Chen**: Property Controller for the Fisher Entities and Accountant for AREA 15.

**Clark Briffel**: Director of Leasing for the Fisher Entities and AREA 15.

**Cliff Spierer**: Chief Financial Officer for the Fisher Entities.

**Sam Rosenberg**: Chief Financial Officer for the Fisher Entities.

**Petronela Digeratu**: Corporate employee for the Fisher Entities.

**Susan Dalton**: Director of Human Resources for the Fisher Entities and AREA 15.

**Winston Fisher**: Chief Executive Officer of AREA 15 and Partner of the Fisher Entities.

**Martin Edelman**: Partner of the Fisher Entities.

**Jitendra Jain**: Director of Development for the Fisher Entities, who oversaw the development, design, and construction of AREA 15.

**Stephanie Roney**: Acquisitions and Development Analyst for the Fisher Entities and Project Manager for AREA 15.

**Katie Liu**: Fisher Entities information technology ("IT") director, who oversaw all AREA 15 IT matters.

19.     **Winston Fisher** consulted with **Kenneth Fisher**, and others, regarding post-COVID safety for AREA 15.

20.     **Kenneth Fisher and Winston Fisher received weekly status reports** regarding AREA 15 issues. These status reports led to dialogues between the FB Individual Defendants regarding management of AREA 15.

**DEFENDANTS DISCRIMINATED AGAINST MS. TURNER BASED ON HER RACE**

21.     Defendants consistently and routinely discriminated against Ms. Turner because of her race. The discrimination was ongoing and increased in frequency and severity over time. Ultimately, the heinous acts of racism and Ms. Turner's attempt to stop the racism resulted in her pretextual termination.

//

**COMPLAINT**

5

22. Beginning in February 2019, Ms. Turner was employed by Defendants as Retail Operations Manager/Assistant General Manager.

23. Defendants forced Ms. Turner, who was in her last trimester of pregnancy, to work in conditions less favorable than white coworkers.

24. When Ms. Turner took maternity leave, her time and pay were cut in half. She had to utilize two weeks of personal-time-off for the baby then returned to work remotely on May 8, 2019.

25. In or about June 2019, Ms. Turner met with Jim Heilmann, AREA 15's General Manager, to discuss breast pumping accommodations before her return to the office. Defendants assured Ms. Turner that a space would be available to accommodate her needs. Nevertheless, she was forced to pump in the restroom. She was then moved to a small office with no lock and a window, whereby fellow employees could see her as they walked by. Defendants then moved Ms. Turner to another office with no HVAC that was often being utilized by other employees.

26. Ms. Turner consistently worked in excess of 72 hours per week once she returned to work from maternity leave.

27. In December 2019, Defendants gave Ms. Turner all positive comments on her annual review. James Heilmann told Ms. Turner she was a high performer who performed consistently at a high level. Mr. Heilmann also told her she would not be receiving an increase in salary and that her bonus was reduced due to her being on maternity leave, even though she was working during that time.

28. **Defendants underpaid Black employees** like Sequoah Turner in comparison to white AREA 15 employees in similarly situated employment.

29. **Defendants paid Ms. Turner less than white coworkers** in similarly situated positions.

30. In April 2020, Defendants gave Ms. Turner a new title: Director of Retail. This "title" came with no increase in compensation. Ms. Turner was the only Black director.

31. Every other director, but one, was paid more than Ms. Turner.

32. Ms. Turner was **paid less money than her white subordinate**.

33. Out of the 200 employees at AREA 15 and 60+ employees at the corporate office, Defendants only employed approximately seven (7) Black employees outside of security.

//

**COMPLAINT**

6

34. In May 2020, Josh Baro, AREA 15's Senior Sales Manager, had shaved his head. During an AREA 15 telephone meeting, Mr. Baro made inappropriate jokes about his new "**skinhead**" appearance that made Ms. Turner very uncomfortable.

35. Ms. Turner and fellow employee George Jaramillo asked Mr. Heilmann and Howard Weiss, Head of Sales and Entertainment Strategy, to address this "skinhead" comment with Mr. Baro. Mr. Heilmann replied that **Ms. Turner was "pulling the race card" again** and did not see how the incident was offensive.

36. Ms. Turner then had a phone call with Susan Dalton, Defendants' Director of Human Resources. Ms. Dalton did nothing about Mr. Baro's racial overtones. It was obvious to Ms. Turner that Defendants were trying to cover up Mr. Baro's actions.

37. In July 2020, Ms. Turner emailed Defendants, telling them they should hold all employees accountable equally. After Ms. Turner sent the email, Dan Pelson, AREA 15's Chief Operating Officer, and Mr. Heilmann, told Ms. Turner to not send them such emails.

38. Ms. Turner then spoke with Ms. Dalton and expressed her hurt and disappointment over her white subordinate making more money than her and the response Mr. Pelson and Mr. Heilmann gave in response to her email.

39. As a director, Ms. Turner continually asked Defendants for an assistant, as had similarly situated white employees.

40. Throughout the next several months, Defendants continually denied Ms. Turner the needed help, even though Defendants provided the requested support to white employees, both in Ms. Turner's department and outside of her department.

41. In or about January 2021, Mr. Heilmann asked Ms. Turner to essentially falsify information. Ms. Turner refused to do so. After being asked to falsify documents, Ms. Turner provided a 30-day notice. Mr. Heilmann refused to honor the 30-day notice given and terminated Ms. Turner shortly thereafter.

42. Defendants' constructive termination of Ms. Turner was an orchestrated and pretextual termination that would not have occurred, but for Ms. Turner's race.

43. Defendants had praised Ms. Turner for her stellar work and promoted her in title.

44. Defendants forced Ms. Turner out of AREA 15 through their constant racial discrimination in the workplace and by the favorable treatment of other similarly situated white employees, and Defendants' failure to discipline glaring, explicit racial misconduct. Defendants were

**COMPLAINT**

trying to force Ms. Turner to quit or make the workplace conditions so intolerable that no reasonable person in Ms. Turner's position would remain employed.

45. Defendants acted confidently that Ms. Turner's complaints of racial discrimination would never see the light of day.

### FIRST CLAIM FOR RELIEF
### EMPLOYMENT DISCRIMINATION BASED ON RACE
### TITLE VII (42 U.S.C. § 2000e-2)
### AGAINST ALL DEFENDANTS

46. Ms. Turner re-alleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

47. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race.

48. Defendants knew or should have known of their obligation, pursuant to Federal and State statutes, to maintain a workplace free of racial discrimination.

49. Defendants failed to take reasonably adequate steps to prevent racial discrimination in their workplace in the State of Nevada.

50. Defendants knew, at all times, that Ms. Turner was of African American origin. Defendants, acting through and with their employees, subjected Ms. Turner to disparate treatment and a hostile work environment including, but not limited to, making remarks intended to humiliate Ms. Turner, denying Ms. Turner benefits, and denying Ms. Turner the same rights and privileges of other employees due to her race.

51. Defendants, acting through and with their employees and agents, discriminated illegally against Ms. Turner because their remarks and treatment were not directed to similarly situated non-African American employees.

52. But for Defendants' racial discrimination against Ms. Turner and her complaints about discriminatory conduct, Ms. Turner would still be employed by AREA 15 and earning the salary and bonuses she was promised.

53. As a direct and proximate result of Defendants' unlawful conduct, Ms. Turner suffered damages and is entitled to compensation for loss of enjoyment of life, mental and emotional pain and suffering, economic loss, and other related costs which, with reasonable probability, will be experienced and/or required in the future.

54. The acts, conduct, and behavior of Defendants were performed knowingly and intentionally and were malicious, oppressive, and in reckless disregard of Ms. Turner's rights, entitling her to punitive damages.

55. As a direct and proximate result of Defendants' actions, Ms. Turner has been required to retain the services of attorneys to prosecute this claim and is entitled to be compensated for any costs incurred in the prosecution of this action, including without limitation, any and all costs and attorney's fees.

**SECOND CLAIM FOR RELIEF**
**HOSTILE WORK ENVIRONMENT**
**TITLE VII (42 U.S.C. § 2000e-2)**
**AGAINST ALL DEFENDANTS**

56. Ms. Turner re-alleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

57. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race or sexual orientation.

58. Defendants knew or should have known of their obligation, pursuant to Federal and State statutes, to maintain a workplace free of discrimination.

59. Defendants knew, at all times, that Ms. Turner was African American. Defendants, acting through and with their employees, subjected Ms. Turner to disparate treatment and a hostile work environment, including but not limited to making remarks intended to humiliate Ms. Turner, denying her benefits, and denying her the same rights and privileges of other employees due to her race.

60. Defendants' remarks and treatment were intended to humiliate and intimidate Ms. Turner. The remarks and treatment were unwelcomed by Ms. Turner and were sufficiently severe and pervasive so as to alter the conditions of Ms. Turner's employment and create an abusive working environment.

61. Defendants' comments and actions were so severe and pervasive as to pollute Ms. Turner's workplace, making it more difficult for her to do her job free from discriminatory intrusions and ultimately to retain her job.

//

COMPLAINT

9

62. As a direct and proximate result of Defendants' unlawful conduct, Ms. Turner suffered damages and is entitled to compensation for loss of enjoyment of life, mental and emotional pain and suffering, economic loss, and other related costs which, with reasonable probability, will be experienced and/or required in the future.

63. The acts, conduct, and behavior of Defendants were performed knowingly and intentionally and were malicious, oppressive, and in reckless disregard of Ms. Turner's rights, entitling her to punitive damages.

64. As a direct and proximate result of Defendants' actions, Ms. Turner has been required to retain the services of an attorney to prosecute this claim and is entitled to be compensated for any costs incurred in the prosecution of this action, including without limitation, any and all costs and attorney's fees.

**THIRD CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST ALL DEFENDANTS**

65. Ms. Turner re-alleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

66. Defendants' conduct was extreme and outrageous and performed with reckless disregard that such actions would cause emotional distress to Ms. Turner.

67. Ms. Turner suffered severe and extreme emotional distress as the direct and proximate result of Defendants' conduct in an amount to be proven at trial, plus pre- and post-judgment interest.

68. The acts, conduct, and behavior of Defendants were performed knowingly and intentionally and were malicious, oppressive, and in reckless disregard of Ms. Turner's rights, entitling her to punitive damages.

69. As a direct and proximate result of Defendants' actions, Ms. Turner has been required to retain the services of an attorney to prosecute this claim and is entitled to be compensated for any costs incurred in the prosecution.

**FOURTH CLAIM FOR RELIEF**
**DISCRIMINATION PURSUANT TO NRS 613.330 et. seq.**
**AGAINST ALL DEFENDANTS**

70. Ms. Turner re-alleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

71. The discrimination, denial of benefits, and retaliatory actions by Defendants, due to Ms. Turner's race, constitute unlawful discriminatory employment practices under the Nevada Equal Employment Opportunity Act – NRS 633.310 *et. seq*.

72. Ms. Turner suffered severe and extreme emotional distress as the direct and proximate result of Defendant's conduct in an amount to be proven at trial.

73. The acts, conduct, and behavior of Defendants were performed knowingly and intentionally and were malicious, oppressive, and in reckless disregard of Ms. Turner's rights, entitling her to punitive damages.

74. As a direct and proximate result of Defendants' actions, Ms. Turner has been required to retain the services of an attorney to prosecute this claim and is entitled to be compensated for any costs incurred in the prosecution.

**FIFTH CLAIM FOR RELIEF**
**DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**
**AGAINST ALL DEFENDANTS**

75. Ms. Turner re-alleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

76. Defendants' discrimination against Ms. Turner is in violation of the rights of Ms. Turner afforded her by the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

77. Defendants knew or should have known of their obligation, pursuant to Federal and State statutes, to maintain a workplace free of discrimination based on race.

78. Defendants failed to take reasonably adequate steps to prevent discrimination based upon race in its workplace in the State of Nevada.

79. Defendants, acting through and with their employees and agents, subjected Ms. Turner to disparate treatment and a hostile work environment, including but not limited to making remarks intended to humiliate Ms. Turner, denying Ms. Turner benefits, and denying Ms. Turner the same rights and privileges of other employees due to her African American race.

80. Defendants' remarks and actions were intended to humiliate and intimidate Ms. Turner and to undermine her safety in the workplace.

**COMPLAINT**

81. Defendants further exemplified their racial discrimination by paying employees of color less than similarly situated White employees and withholding other benefits from Ms. Turner because of her race, while providing these benefits to White employees.

82. Defendants, acting through and with their employees, unlawfully discriminated against Ms. Turner because their remarks and actions were not directed to similarly situated White employees.

83. As a direct and proximate result of Defendants' unlawful conduct, Ms. Turner suffered damages and is entitled to compensation for loss of enjoyment of life, mental and emotional pain and suffering, economic loss, and other related costs which, with reasonable probability, will be experienced and/or required in the future.

84. The acts, conduct, and behavior of Defendants were performed knowingly and intentionally and were malicious, oppressive, and in reckless disregard of Ms. Turner's rights, entitling her to punitive damages.

85. As a direct and proximate result of Defendants' actions, Ms. Turner has been required to retain the services of an attorney to prosecute this claim and is entitled to be compensated for any costs incurred in the prosecution of this action, including without limitation, any and all costs and attorney's fees.

WHEREFORE, PLAINTIFF prays for judgment to be entered in her favor and against each of the Defendants as follows:

1. For special damages for lost wages, bonuses, vacation pay, 401k compensation and other compensatory, and economic and special damages according to proof at trial, together with interest, penalties, and costs;
2. For general and non-economic damages according to proof at trial;
3. For attorney's fees according to proof at trial;
4. For punitive damages as allowed by law and according to proof at trial;
5. For pre-judgment interest at the prevailing legal rate;
6. For costs of suit; and

//

7. For such other and further relief as this Court deems just and proper.

Dated: August 19th, 2022

                                              KAPLAN YOUNG

                                              By: <u>Kory L. Kaplan</u>
                                              Kory L. Kaplan - Nevada Bar No. 13164
                                              10091 Park Run Drive, Suite 190
                                              Las Vegas, Nevada 89145

                                              *Attorneys for Plaintiff Sequoah Turner*


                                              BROWN, CLARK, LE, AMES, STEDMAN & CEVALLOS LLP

                                              By: <u>Edwin B. Brown</u>

                                              Edwin B. Brown (*Pro Hac Vice Forthcoming*)
                                              22342 Avenida Empresa, Suite 125
                                              Rancho Santa Margarita, CA 92688

**COMPLAINT**